```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/18/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMBER L. COOPER,

                              Plaintiff,

                -against-                                    23-CV-11174 (MMG)

SBH HEALTH SYSTEM, et al.,                          **OPINION & ORDER**

                              Defendants.

MARGARET M. GARNETT, United States District Judge:

## INTRODUCTION

Plaintiff Amber Cooper ("Plaintiff"), proceeding *pro se*, brings this action against her former employer SBH Health System ("SBH") and certain of its employees—David Perlstein, Keith Wolf, Manisha Kulshreshtha, and Karen Johnson (the "Individual Defendants") (collectively with SBH, "Defendants"). The Complaint asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII") for discrimination, retaliation, and hostile work environment, and additional claims for breach of contract, slander, violations of HIPAA, and violations of unspecified federal labor and employment laws. Before the Court is Defendants' motion to dismiss the Complaint in its entirety. For the reasons that follow, the motion is GRANTED.

## BACKGROUND

### I.    FACTUAL BACKGROUND[1]

Plaintiff began working in an unspecified role at a hospital operated by Defendant SBH in August 2015. Compl. ¶ 3. Kulshreshtha, Plaintiff's former supervisor, promoted Plaintiff to

---

[1] This Opinion draws its facts from Plaintiff's Complaint (Dkt. No. 1), the well-pleaded allegations of which are taken as true for purposes of this Opinion. *See Ashcroft v. Iqbal*, 556 U.S. 662,

Manager of Academic Affairs in June 2019.  Compl. ¶ 4; Opp. at 5.  As a partial successor to the

former Director of Medical Staff and Academic Affairs, Plaintiff split the prior position's duties

with a colleague who took the position of Manager of Medical Staff.  Compl. ¶ 4; Opp. at 4.

After learning that her colleague would be making a considerably larger salary despite

possessing purportedly the same qualifications, Plaintiff unsuccessfully attempted to negotiate

with Kulshreshtha for higher pay.  *Id.* ¶ 6.  Plaintiff again attempted to negotiate higher pay in

June 2020, appealing to SBH's stated mission to promote diversity and equality and citing an

increase in her work responsibilities following the departure of one of her subordinates.  *Id.* ¶¶

7–9.  Her requests were again denied.  *Id.* ¶ 9.

      In the meantime, the COVID-19 pandemic began, and Plaintiff started working at least

partly from home in March 2020, along with other employees in SBH's administrative staff.  *Id.*

¶ 14.  Her work consisted of interacting with medical students and residents, duties she maintains

could be adequately performed from her home via email and phone.  Opp. at 2.  She eventually

settled into a hybrid work arrangement whereby she worked in-person at the hospital on limited

days in order to foster a more comfortable relationship with the students and residents that she

worked with, through face-to-face interaction.  *Id.* at 4; Compl. ¶ 14.

      On August 26, 2021, the New York State Department of Health issued a regulation

directing certain healthcare facilities to require their personnel to be fully vaccinated against

COVID-19 if their personnel "engage[d] in activities such that if they were infected with

---

678–79 (2009).  The Court also relies, as appropriate, on Plaintiff's opposition brief.  S*ee Walker* v.
*Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider
factual allegations made by a *pro se* party in [her] papers opposing the motion.").  The Court shall refer to
the parties' memoranda of law in support of and opposition to Defendants' motion to dismiss as follows:
Dkt. No. 17 ("Mot."); Dkt. No. 27 ("Opp."); Dkt. No. 31 ("Reply").

COVID-19, they could potentially expose other covered personnel, patients or residents to the disease" (the "DOH Mandate").  10 N.Y.C.R.R. § 2.61.  Around that time, Kulshreshtha and Defendant Karen Johnson sent an email to all SBH employees stating that they needed to be vaccinated by September 27, 2021 (the "Vaccine Policy"), a deadline that was later changed to September 24, 2021.  Compl. ¶¶ 10, 13.

Plaintiff did not get the vaccine, and Kulshreshtha allegedly "constantly harassed, questioned, inquired and proceeded to bribe" Plaintiff about getting it.  *Id.* ¶ 11.  On September 24, 2021, Plaintiff met with Johnson to request a religious exemption from the Vaccine Policy.  *Id.* ¶ 15.  She also alleges that she proposed alternative accommodations, such as working remotely or receiving weekly COVID-19 testing while working in-person.  Opp. at 3.  At the September 24 meeting, Johnson informed Plaintiff that she "would be placed on a pending status, off duty and unpaid."  Compl. ¶ 15.  Johnson informed Plaintiff on October 18, 2021, that her request for a religious exemption was denied.  *Id.* ¶ 23.  Shortly thereafter, Plaintiff re-submitted her request for a religious exemption, which was ignored.  *Id.* ¶ 24–25.  In the ensuing weeks, Johnson and Wolf levied accusations of misconduct against Plaintiff, including that she had destroyed SBH equipment.  *Id.* ¶¶ 25–27.  Plaintiff was terminated on November 26, 2021.  *Id.* ¶ 30.

## II.    PROCEDURAL HISTORY

Plaintiff filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC") on March 24, 2022, which she amended on January 3, 2023.  *See* Dkt. No. 16, Exs. 14–15.  The EEOC issued her a notice of dismissal and right-to-sue letter on September 25, 2023.  Compl. at 12.

Plaintiff filed an action against Defendants in New York Supreme Court, Bronx County, on December 14, 2022 (the "State Action"). Dkt. No. 16, Ex. 1. Defendants moved to dismiss the State Action on July 11, 2023, and their motion remains outstanding. *See Cooper v. SBH Health System et al.*, No. 6160/2022 (N.Y. Sup. Ct., Bronx Cnty.).

On December 22, 2023, Plaintiff initiated the instant action (the "Federal Action") by filing a complaint essentially identical to her complaint in the State Action. Dkt. No. 1. Defendants filed a motion to dismiss pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(6), arguing that this Court should abstain from asserting jurisdiction over the Federal Action pursuant to *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976) ("*Colorado River*") and that Plaintiff has failed to state a claim upon which relief can be granted.

## DISCUSSION

As discussed further below, because abstention is not warranted under *Colorado River* and the exercise of jurisdiction is proper, Defendant's arguments for dismissal under Rule 12(b)(6) must also be addressed. Those arguments are substantially correct, and the Complaint must be dismissed in its entirety.

## I. ABSTENTION IS NOT WARRANTED

Defendants argue that this Court should abstain from exercising jurisdiction over the claims in the Federal Action pursuant to the doctrine established in *Colorado River*.[2] Mot. at 1. "[F]ederal courts have a 'virtually unflagging obligation' to exercise their jurisdiction." *Niagara*

---

[2] "A motion to dismiss based on *Colorado River* is considered as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of [the] Federal Rules of Civil Procedure." *JPMorgan Chase Bank, N.A. v. Avara US Holdings LLC*, No. 23-CV-07145 (JGK), 2024 WL 709068, at *4 (S.D.N.Y. Feb. 21, 2024) (internal references omitted).

*Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Colorado River*, 424 U.S. at 817). Thus, abstention "is the exception, not the rule." *Id.* (quoting *Colorado River*, 424 U.S. at 813–14). Still, in "exceptional circumstances" where "parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources," federal courts may abstain from exercising their jurisdiction. *Id.* (quoting *Colorado River*, 424 U.S. at 813, 817).

In determining whether abstention is appropriate, the Court must "make a threshold determination 'that the concurrent proceedings are parallel.'" *Mochary v. Bergstein*, 42 F.4th 80, 85 (2d Cir. 2022) (quoting *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)). Suits are parallel when "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Id.* at 85 (quoting *Dittmer*, 146 F.3d at 118); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997) ("Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same. . . ."). Here, the Court concludes that the state and federal actions are concurrent and parallel because they comprise "identical complaints against the same parties and raising the same issues." *Harewood-Bey v. Biden*, No. 22-CV-01472 (LTS), 2022 WL 3353480, at *4 (S.D.N.Y. Aug. 12, 2022).

If a federal court determines that a state action and a federal action are parallel, it then determines whether abstention is warranted by considering six factors:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15–16 (1983). "In this analysis, the balance is heavily weighted in favor of the exercise of jurisdiction. Thus, the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it." *Gentes v. Osten*, No. 21-2022, 2022 WL 16984686, at *2 (2d Cir. Nov. 17, 2022) (quoting *Woodford*, 239 F.3d at 522). The Court will address each factor in turn.

### 1.    Controversy Involving a *Res*

Neither the State nor Federal Action involves a controversy over a *res*. Because this factor is neutral, it weighs against abstention. *See Niagara Mohawk Power Corp.*, 673 F.3d at 101 (neutral factors favor retaining federal jurisdiction).

### 2.    Relative Convenience of the Forums

There is no contention that this Court is more or less convenient forum than New York Supreme Court, Bronx County. As this factor is neutral, it weighs against abstention. Defendants attempt to argue that this factor favors abstention because it would be inconvenient for them to undertake duplicative discovery in a federal action. Mot. at 6. Defendants misconstrue the factor. "The inconvenience of the federal forum refers to the geographical relation of the respective courthouses," *Teves Realty, Inc. v. Bartley*, No. 14-CV-03227 (RRM), 2017 WL 1232443, at *3 n.8 (E.D.N.Y. Mar. 31, 2017), not the general burden of litigating an additional case.

### 3.    Avoidance of Piecemeal Litigation

"'By far the most important factor' in the *Colorado River* abstention analysis is the 'clear federal policy . . . [of] avoidance of piecemeal adjudication.'" *Zeppelin Sys. USA, Inc. v. Pyrolyx*

*USA Indiana, LLC*, No. 19-CV-11222 (CM), 2020 WL 1082774, at *7 (S.D.N.Y. Mar. 5, 2020)

(quoting *Moses*, 460 U.S. at 16).   This factor "is implicated where 'a failure to abstain may

result in inconsistent dispositions that would breed additional litigation on assertions of claim

and issue preclusion.'"   *Riggi v. Charlie Rose Inc.*, 777 F. Supp. 3d 356, 365 (S.D.N.Y. 2025)

(quoting *TD Bank, N.A. v. 202-4 W. 23rd St. Corp.*, 760 F. Supp. 3d 87, 93 (S.D.N.Y. 2024)); *see

also Nationwide Gen. Ins. Co. v. Rael Maint. Corp.*, No. 23-CV-04433-GHW, 2024 WL

1805544, at *6 (S.D.N.Y. Apr. 24, 2024) ("The central problem with piecemeal

adjudication . . . is that a potential exists for inconsistent and mutually contradictory

determinations."  (quoting *De Cisneros v. Younger*, 871 F.2d 305, 308 (2d Cir. 1989)).

        While Defendants assert that this factor weighs strongly in favor of abstention because

the Federal Action and the State Action "involve the same exact parties and concern identical

claims," Mot. at 7, the proper finding is exactly the opposite.   "[B]ecause the two proceedings all

involve the same dispute between the same two parties, a decision in one proceeding would

generally have preclusive effect in the other, which significantly reduces any concern about

piecemeal litigation." *Riggi*, 777 F. Supp. 3d at 365 (quoting *Yu v. Gao*, No. 24-CV-03902

(AMD) (JRC), 2025 WL 80658, at *6 (E.D.N.Y. Jan. 13, 2025)).   "[T]he primary context in

which [the Second Circuit has] affirmed *Colorado River* abstention in order to avoid piecemeal

adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by

principles of res judicata and collateral estoppel." *Woodford*, 239 F.3d at 524.  Defendants have

not shown why those ordinary legal principles would be insufficient for avoiding inconsistent

outcomes between this case and the State Action, so the Court concludes that this factor weighs

against abstention. *See TD Bank*, 760 F. Supp. 3d at 94 (finding the third factor weighs in favor

of the federal forum where the defendant "has failed to demonstrate how principles of res

judicata and/or collateral estoppel would fail to prevent the possibility of inconsistent outcomes").

### 4.    Order in Which Jurisdiction Was Obtained

The fourth factor, the order in which jurisdiction was obtained, turns not just "on the sequence in which the cases were filed, 'but rather in terms of how much progress has been made in the two actions.'" *Vill. of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) (quoting *Moses*, 460 U.S. at 21). "In addition, where there has been limited progress in a state court suit, 'the fact that the state action was commenced before the federal suit carries little weight.'" *Id.* (quoting *Andrea Theatres, Inc. v. Theatre Confections, Inc.*, 787 F.2d 59, 64 (2d Cir.1986)). The State Action was commenced first, but little progress has been made, as Defendant's motion to dismiss in that action has been outstanding for approximately two years. Accordingly, this factor is neutral and thus weighs against abstention.

### 5.    Law Supplying the Rule of Decision

Plaintiff's Title VII claims clearly depend on federal law, and while state courts are more than competent to adjudicate such claims, the fifth factor plainly weighs against abstention.

### 6.    Adequate Protection of Plaintiff's Rights

The sixth factor looks to whether "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Niagara Mohawk Power Corp.*, 673 F.3d at 103 (quoting *Moses*, 460 U.S. at 28). "Although any possible inadequacy of the state forum to protect the federal plaintiff's rights would provide a strong reason to exercise federal jurisdiction, the adequacy of the state forum does not weigh heavily in favor of dismissal pursuant to *Colorado River*." *Stahl York Ave. Co., LLC v. City of New York*, No. 14-CV-07665 (ER), 2015 WL 2445071, at *12 (S.D.N.Y. May 21, 2015), *aff'd,* 641 F. App'x 68 (2d Cir. 2016) (quoting *Estee Lauder Companies Inc. v. Batra,* 430 F. Supp. 2d 158,

169 (S.D.N.Y. 2006)).  Thus, while the New York state court would adequately protect Plaintiff's rights, this factor is largely neutral.  *See TD Bank*, 760 F. Supp. at 95; *Phillips v. Citibank, N.A.*, 252 F. Supp. 3d 289, 303 (S.D.N.Y. 2017) ("[T]he ability of the state court to adequately protect Plaintiff's interests only makes this factor neutral.") (quoting *Dalzell Mgmt. Co. v. Bardonia Plaza, LLC*, 923 F.Supp.2d 590, 602 (S.D.N.Y. 2013)).

Thus, none of the six *Colorado River* factors weighs in favor of abstention.  In light of the heavy presumption favoring the exercise of federal jurisdiction, the "exceptional circumstances" required for *Colorado River* abstention are not present here.  *See Vill. of Westfield*, 170 F.3d at 124.  Defendants' request for the Court to abstain from asserting jurisdiction is therefore denied.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM

When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal references omitted). Thus, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

9

Additionally, "[a] document filed *pro se* is to be liberally construed, and *a pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal references omitted). In particular, "the pleadings of *a pro se* plaintiff . . . should be interpreted to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (internal references omitted). *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Thus, although the Court is "obligated to draw the most favorable inferences" that a *pro se* complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal references omitted).

### A. Plaintiff Fails to Allege Any Violation Under Title VII

Plaintiff contends that Defendant discriminated against her on the basis of her race, color, and religion, and subjected her to retaliation and a hostile work environment, all in violation of Title VII. None of these claims are adequately pled.

### 1. The Individual Defendants Are Not Liable for Title VII Violations

As an initial matter, Plaintiff's Title VII claims against the Individual Defendants must be dismissed because there is no individual liability for Title VII claims. *See Spiegal v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (noting that there is no individual liability under Title VII); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) ("We now hold that individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII."); *Nanakumo v. N.Y.C. Health & Hosps. Corp.*, No. 23-CV-00314 (ALC), 2025 WL 919479, at *5 (S.D.N.Y. Mar. 26, 2025) ("Plaintiff's Title VII claims fail against all Individual Defendants because there is no individual liability for Title VII claims.")

10

2.    **The Title VII Discrimination Claim Fails**

Liberally construing the Complaint, Plaintiff brings both a disparate treatment claim and a failure-to-accommodate claim.  Under Title VII, it is unlawful for "an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  In addition to that general anti-discrimination provision, "Title VII imposes an affirmative obligation on the employer to accommodate an employee's religious observance or practice unless doing so would cause 'undue hardship on the conduct of the employer's business.'"  *Corrales v. Montefiore Med. Ctr.*, No. 22-CV-03219 (LAP), 2023 WL 2711415, at *5 (S.D.N.Y. Mar. 30, 2023) (quoting 42 U.S.C. § 2000e(j)).  Plaintiff alleges disparate treatment on the basis of race and color in connection with various instances of purportedly unfair treatment throughout her employment, and she specifically alleges Defendants failed to accommodate her religious beliefs in connection with the Vaccine Policy.  None of these allegations states a claim of discrimination under Title VII.

i.    **Plaintiff Fails to Allege Disparate Treatment**

"In order to survive a motion to dismiss for a Title VII discrimination claim, 'a plaintiff must plausibly allege that (1) the employer took adverse action against [her] and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision.'" *Kueh v. New York & Presbyterian Hosp.*, No. 23-CV-00666, 2024 WL 4882172, at *3 (S.D.N.Y. Nov. 25, 2024) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015)).  Thus, "a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87.

In determining whether a Plaintiff has plausibly alleged discrimination, "the court is to 'draw on its judicial experience and common sense.'"  *Id.* at 86 (quoting *Iqbal*, 556 U.S. at 679). Because there is rarely "direct, smoking gun, evidence of discrimination," a plaintiff may rely on "bits and pieces of information to support an inference of discrimination."  *Id.* (internal references omitted).  Where, as here, the plaintiff does not allege that the defendant made any expressly discriminatory statements, she "can raise an inference of discrimination by demonstrating the disparate treatment of at least one similarly situated employee outside [her] protected group and sufficient facts from which it may reasonably be inferred that 'the plaintiff's and comparator's circumstances . . . bear a reasonably close resemblance.'"  *Royall v. City of Beacon*, No. 24-CV-00003 (KMK), 2024 WL 4266546, at *16 (S.D.N.Y. Sept. 23, 2024) (quoting *Sutter v. Dibello*, No. 18-CV-00817, 2021 WL 930459, at *21 (E.D.N.Y. Mar. 10, 2021).

Here, Plaintiff's disparate treatment discrimination claim fails because she has not alleged facts directly showing discrimination or supporting an inference of discrimination.  She recites a host of grievances but does nothing to connect her alleged mistreatment to her membership in a protected class.  For example, she alleges race and color discrimination because Defendant "[d]id not provide [her] with equal pay."  Compl. at 3.  Yet, she does not even allege her own race or ethnicity, let alone facts suggesting discrimination on that basis, whether by pointing to discriminatory remarks or showing that she was treated differently from other employees who were not members of her protected class.  She does identify a colleague who earned a higher salary than her.  *Id.* ¶ 6.  But, again, she fails to distinguish herself on the basis of any protected class, and she insufficiently alleges that the colleague was similarly situated to her, especially given that the two employees held entirely different positions.  *See* Opp. at 4

("Although the positions were different, they were very similar as we both were responsible for credentialing."); *Miller-Sethi v. City Univ. of New York*, No. 21-CV-08591 (JPO), 2023 WL 419277, at *4 (S.D.N.Y. Jan. 26, 2023) (noting that "individuals must be similarly situated 'in all material respects'" in order for their preferential treatment to support an inference of discrimination) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)). Every other allegation of disparate treatment in the Complaint is similarly deficient. Plaintiff merely alleges examples of perceived unfair treatment with no apparent relation to her membership in a protected class. Such allegations simply cannot state a claim under Title VII. *See Balk v. New York Inst. of Tech.*, No. 11-CV-00509 (SAS), 2015 WL 5518709, at *7 (E.D.N.Y. Sept. 16, 2015), *aff'd*, 683 F. App'x 89 (2d Cir. 2017) ("[Plaintiff] cannot raise an inference of discrimination merely by presenting evidence that he was treated badly or unfairly.").

### ii. Defendants' Undue Hardship Defeats the Failure-to-Accommodate Claim

Title VII prohibits employers from discriminating against employees with respect to the "compensation, terms, conditions, or privileges of employment" based on protected classifications, including religion. 42 U.S.C. § 2000e-2(a)(1). The statute defines "religion" as including "all aspects of religious observance and practice, as well as belief," and imposes an obligation on an employer "to accommodate the religious practice of their employees unless doing so would impose an 'undue hardship on the conduct of the employer's business.'" *Groff v. DeJoy*, 600 U.S. 447, 453–54 (2023) (quoting 42 U.S.C. § 2000e(j)). "A reasonable accommodation is one that eliminates the conflict between the employment requirement and the employee's religious practice." *Conde v. Mid Hudson Reg'l Hosp. Med. Ctr.*, No. 22-cv-03085 (VB), 2024 WL 168282, at *7 (S.D.N.Y. Jan. 12, 2024). Accordingly, to state a claim for

religious discrimination under Title VII for failure to accommodate, an employee must plausibly allege that she "'actually requires an accommodation of . . . her religious practice' and that 'the employer's desire to avoid the prospective accommodation was a motivating factor in an employment decision.'" *Lowman v. NVI LLC*, 821 F. App'x 29, 31 (2d Cir. 2020) (summary order) (quoting *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773–74 (2015)).

"An employer does not violate Title VII, however, if it can show that the prospective accommodation 'would cause the employer to suffer an undue hardship.'" *D'Cunha v. Northwell Health Sys.*, No. 23-00476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023) (quoting *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002). While undue hardship is an affirmative defense, an employer may raise it on a pre-answer motion to dismiss if the facts establishing the defense are clear from the face of the complaint. *See Does 1-2 v. Hochul*, No. 22-2858, 2024 WL 5182675, at *3 (2d Cir. Dec. 20, 2024) (summary order); *D'Cunha*, 2023 WL 7986441, at *2.

Plaintiff's failure-to-accommodate claim must be dismissed because her requested exemption from the Vaccine Policy would have required Defendants to violate the law. "Courts in this Circuit routinely hold that undue hardship exists as a matter of law where an accommodation, including with respect to COVID-19 vaccination, would require the defendant to violate state law, including the DOH Mandate." *Kauffman v. New York Presbyterian Hosp.*, 762 F. Supp. 3d 309, 319 (S.D.N.Y. 2025) (collecting cases). Indeed, the Second Circuit has already held in three separate cases that granting religious exceptions to the DOH Mandate would have created undue hardship for hospitals because the New York law did not allow hospitals to grant religious exemptions to covered personnel. *See D'Cunha*, 2023 WL 7986441, at *3; *Does 1-2*, 2024 WL 5182675, at *4; *Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th

14

182, 186 (2d Cir. 2025).  Thus, Second Circuit precedent forecloses Plaintiff's religious

discrimination claim as pled in the Complaint.

The Second Circuit has noted that "it may be possible under the [DOH Mandate] for an

employer to *accommodate*—not *exempt*—employees with religious objections, by employing

them in a manner that removes them from the [DOH Mandate]'s definition of 'personnel.'"  *We*

*The Patriots USA, Inc. v. Hochul*, 17 F.4th 368, 370 (2d Cir. 2021).  Plaintiff does not adequately

plead that she requested such an accommodation.  In her Opposition, however, she briefly

mentions seeking accommodations such as permission to work fully remote or to receive weekly

Covid testing.  Opp. at 3.  It is likely that such accommodations would have also created an

undue hardship for Defendant, s*ee, e.g.*, *Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d

497, 511 (S.D.N.Y. 2023), *aff'd sub nom. Algarin v. N.Y.C. Health & Hosps. Corp.*, No. 23-

1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024) ("[T]racking compliance with testing,

permitting Plaintiff to potentially expose other workers at [the hospital] to the COVID-19 virus,

and facing legal consequences if someone should be infected with COVID-19 due to exposure

from Plaintiff, are all significant hardships that create an undue burden on Defendant with the

requested accommodation"), and in any case Plaintiff has failed to adequately plead facts with

respect to her purported requests for lesser accommodations.  In light of the special solicitude

afforded to *pro se* litigants, however, the Court grants Plaintiff leave to file an amended

complaint to plead additional facts, if they exist, regarding her alternative accommodation

request for fully remote work.

### 3.    The Title VII Retaliation Claim Fails

To survive a motion to dismiss a Title VII retaliation claim, "the plaintiff must plausibly

allege that: (1) defendants discriminated—or took an adverse employment action—against [her],

(2) because [s]he has opposed any unlawful employment practice."  *Duplan v. City of New York*,

888 F.3d 612, 625 (2d Cir. 2018) (quoting *Vega*, 801 F.3d at 90). In addition, "a plaintiff must plausibly plead a connection between the act and h[er] engagement in protected activity." *Vega*, 801 F.3d at 90 (citing 42 U.S.C. § 2000e–3 (a)).

Here, the "Court's finding that [Defendants] terminated Plaintiff so as to conform with Section 2.61 severs any possible causal connection between her termination and her request for a religious exemption from Section 2.61's vaccination mandate." *Booth v. New York Presbyterian Hosp.-Behav. Health Ctr.*, No. 22-CV-10114 (NSR), 2024 WL 1381310, at *5 (S.D.N.Y. Mar. 29, 2024). In other words, the Vaccine Policy was not an unlawful employment practice as a matter of law, and so Plaintiff's religious retaliation claim must fail. To the extent Plaintiff alleges retaliation in connection with any of her myriad complaints of unfair treatment, she similarly has failed to allege any unlawful employment practice, much less one that she opposed within the meaning of Title VII. Her retaliation claim is therefore dismissed.

**4.     The Title VII Hostile Work Environment Claim Fails**

To plausibly state a hostile work environment claim under Title VII, a plaintiff must plead "that the complained of conduct (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected characteristic." *Nanakumo*, 2025 WL 919479, at *7 (quoting *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015). "Factors that a court might consider in assessing the allegations include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) "whether it unreasonably interferes with an employee's work performance." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal references omitted).

Plaintiff falls far short of the standard to survive a motion to dismiss. She vaguely alleges that her supervisor harassed her over her vaccine status. Compl. ¶ 11. But even when liberally construed, these limited allegations pertain only to Defendants' enforcement of the Vaccine Policy, or even a desire to keep Plaintiff in her positions and avoid having to fire her if she continued to refuse vaccination. Nothing in the Complaint indicates that the alleged comments or behavior betrayed a religious animus. *See Nanakumo*, 2025 WL 919479, at *7 (dismissing hostile work environment claim where plaintiff alleged only "that he and other nonvaccinated employees were harassed and threatened"). Separately, Plaintiff also alleges that "a very awkward and hostile work environment" resulted when she became the manager of a former peer, Opp. at 5–6, but she alleges nothing to connect such ordinary workplace tensions to discrimination. There is simply nothing in the Complaint to support a hostile work environment claim, and the claim must be dismissed.

### B.  Plaintiff Fails to State Analogous Claims Under NYSHRL and NYCHRL

The face of the Complaint asserts discrimination and retaliation claims under only Title VII, but in light of Plaintiff's *pro se* status, the Court construes her Complaint to raise analogous claims under New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"). *See Acosta v. Ross*, No. 23-CV-10292 (KPF), 2025 WL 2578079, at *6 (S.D.N.Y. Sept. 5, 2025) ("[C]onsistent with its obligation to construe a plaintiff's allegations to raise the strongest claims that they suggest, even if the plaintiff has failed to check the appropriate blanks on a court-issued complaint form, the Court considers Plaintiff to raise claims for religious discrimination and retaliation under Title VII and its state and city counterparts, the NYSHRL and the NYCHRL.").

While pleading standards under NYSHRL and NYCHRL are generally more lenient than under Title VII, the Complaint still falls short of stating any claim. Like her Title VII failure to

accommodate claim, any analogous claim under NYSHRL or NYCHRL must be dismissed because Plaintiff's requested accommodation would have required Defendant to violate the DOH Mandate. *See Robin v. Bon Secours Cmty. Hosp.*, No. 23-CV-9222 (CS), 2025 WL 623766, at *15 (S.D.N.Y. Feb. 25, 2025) (dismissing a NYSHRL failure-to-accommodate claim because the requested accommodation would have required the defendant to violate the law). And like her Title VII discrimination, retaliation, and hostile work environment claims, any analogous claims under NYSHRL or NYCHRL must be dismissed because Plaintiff does not allege discriminatory intent or any connection between her protected class and Defendants' conduct. *See Mumin v. City of New York*, 760 F. Supp. 3d 28, 52 (S.D.N.Y. 2024) ("While the NYSHRL and NYCHRL require a more liberal construction than Title VII, a NYSHRL or NYCHRL plaintiff still must allege that, compared to similarly situated employees, she experienced differential treatment — that she is treated 'less well' — because of a discriminatory intent." (quoting *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 257 (S.D.N.Y. 2014)); *Said v. NYC Health & Hosp. Corp.*, No. 23-CV-03313 (OEM) (JAM), 2024 WL 1769317, at *3 (E.D.N.Y. Apr. 24, 2024).

### C.  Plaintiff Fails to State a Claim for Any Other Unlawful Conduct

In addition to her Title VII claims, Plaintiff summarily alleges that Defendants violated various other laws and duties. These vague allegations do not state a cognizable claim.

#### 1.    Generalized Labor and Employment Law Claims

Plaintiff alleges in conclusory fashion that Defendants violated "numerous Federal and State laws" and references "EEOC, labor and employment laws." Compl. ¶ 41. "Although a complaint does not need detailed factual allegations, Rule 8 of the Federal Rules of Civil Procedure demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Dettelis v. Sharbaugh*, 919 F.3d 161, 163 (2d Cir. 2019) (internal references omitted). The Court has already addressed Plaintiff's Title VII claims. To the extent she brings claims under other

federal employment or labor laws, she has not articulated what laws were violated, let alone alleged facts to state a claim under those laws.  Therefore, those claims must be dismissed.

### 2.    HIPAA Claims

Plaintiff also summarily alleges that Defendants violated her "HIPAA rights."  Compl. ¶ 41.  The Second Circuit has held that there is no private right of action under HIPAA.  *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 244 (2d Cir. 2020).  This means than an individual cannot sue to enforce HIPAA's provisions, and Plaintiff's HIPAA claim must be dismissed.

### 3.    Breach of Contract

Plaintiff makes the bare assertion that "she experienced . . . breach of contract."  Compl. ¶ 42.  To state a claim for breach of contract, "[a] plaintiff must plead the provisions of the contract upon which the claim is based—in other words, a complaint in a breach of contract action must set forth the terms of the agreement upon which liability is predicated."  *Abadi v. Am. Airlines, Inc.*, No. 23-CV-04033 (LJL), 2024 WL 1346437, at *45 (S.D.N.Y. Mar. 29, 2024) (internal references omitted).  Plaintiff makes no attempt to allege the existence of contractual provisions that Defendants violated, and her contract claim must be dismissed.  *See Chalfin v. Go Big Solar, LLC*, No. 24-CV-04768 (KPF), 2025 WL 2022012, at *17 (S.D.N.Y. July 17, 2025) ("[A] breach of contract claim will be dismissed where a plaintiff fails to allege the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicatd." (quoting *Generation Next Fashions Ltd. v. JP Morgan Chase Bank, NA*, 698 F. Supp. 3d 663, 673 (S.D.N.Y. 2023)).

### 4.    Slander

Finally, Plaintiff alleges that Defendants "slandered [her] name and reputation by engaging in discrimination, deceitful business practices, falsifying documents and making malicious and intentional statements about the plaintiff."  Compl. ¶ 41.  To state a claim for

defamation under New York Law, which encompasses slander, a Plaintiff must allege: "(1) a defamatory statement of fact about the plaintiff; (2) publication to a third party; (3) fault by the defendant; (4) falsity of the statement; and (5) special damages or per se actionability." *Oakley v. Dolan*, 833 F. App'x 896, 899 (2d Cir. 2020) (citing *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 528 (2d Cir. 2018)).  Additionally, the complaint must "set forth the particular words allegedly constituting defamation . . ., and it must also allege the time, place, and manner of the false statement and specify to whom it was made." *Arvanitakis v. Lester*, 145 A.D.3d 650, 651, 44 N.Y.S.3d 71 (N.Y. App. Div. 2016).

The only false statements referenced in the complaint are the vaguely alleged "false accusations" that Plaintiff received from her superiors.  Compl. ¶¶ 25–26.  Such accusations do not amount to slander because the statements were not published to a third party.  *See McCollum v. Baldwin*, 688 F. Supp. 3d 117, 128 (S.D.N.Y. 2023) ("Plaintiffs' defamation claims that are based on [the defendant's] private communications with [the plaintiff] . . . are not actionable.").  To the extent Plaintiff contends that the Defendants made any false statements to third parties, her defamation claim fails because she does not state the substance of those statements, when they were made, or to whom they were made, among other missing details.

## III.    LEAVE TO AMEND

District courts typically should not dismiss a *pro se* plaintiff's complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal references omitted).  When "the barriers to relief . . . cannot be surmounted by reframing the complaint," however, leave to amend is properly denied as futile.  *Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013).  For the most part, that is the case here.  Even a liberal

reading of the Complaint does not "suggest[ ] that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe." *Cuoco*, 222 F.3d at 112. The only exception, as discussed above, is Plaintiff's failure-to-accommodate claim. The Court grants Plaintiff leave to amend <u>solely</u> to allege additional facts, if they exist, regarding Plaintiff's request for a lesser accommodation (for example, fully remote work) that would have removed her from the DOH Mandate's definition of personnel.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Dkt. No. 15) is GRANTED in its entirety, and leave to amend is denied *except* as to Plaintiff's failure-to-accommodate claim. If she wishes, Plaintiff may file an amended complaint that complies with this ruling no later than November 14, 2025.

Dated: September 18, 2025
     New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge